KENNETH GWYNN, Plaintiff and Appellant, *v.* TOWN OF EUREKA et al., Defendants and Respondents.

No. 14145.
Submitted April 25, 1978.
Decided Aug. 21, 1978.
582 P.2d 1262.

Robert Keller argued, Kalispell, for plaintiff and appellant.

Fennessy, Crocker and Harman, David W. Harman argued, Lib-

by, Robert F. W. Smith, Public Service Com'n. argued, Helena, for defendants and respondents.

John Doubek, Consumer Counsel argued, Helena, for amicus curiae.

MR. JUSTICE SHEA delivered the opinion of the Court.

Plaintiff appeals from a judgment of the Lincoln County District Court that the Public Service Commission did not have jurisdiction over municipal sewage systems and the sewage rates as set by the Town of Eureka were not arbitrary or discriminatory. We hold the Public Service Commission does have jurisdiction over municipal sewage rates and accordingly, the issue of fairness of the sewage rates is one the Public Service Commission must determine.

The dispute arose because of the disparity between sewage rates charged for residential users as opposed to the rates and formulas charged to commercial users. The Town of Eureka is presently allowed to dump its sewage pollutants into the Tobacco River. By June 1979, however, the Town must upgrade its sewage treatment facilities to comply with standards enforced by the Montana Water Quality Bureau, Department of Natural Resources. The Eureka Town Council has determined the 1979 standards will necessitate the construction of one additional acerated lagoon-type treatment plant. The new plant will cost approximately $652,000.

The United States Environmental Protection Agency has awarded the Town a grant of $447,000 to defray the cost of the new plant. The Town decided to raise the remaining $175,000 in estimated costs by using Revenue Bonds pursuant to section 11-2401 et seq., R.C.M.1947. It was also determined these bonds would be funded by an increase in the Eureka sewage rates.

Under the increased sewage rates, residential users will be charged a flat rate of $7 per month, based on an estimated usage of 350 gallons of water per day. Eureka businesses, on the other hand, will be charged individually computed rates, based upon the estimated daily water use of the business. For example, if the city estimates a business will use 700 gallons of water per day, the business will be

charged $14 per month, or twice the flat rate charged a residential user.

Plaintiff, Kenneth Gwynn, owns and operates the only laundromat in Eureka, Montana. His business presently utilizes thirty (30) coin-operated washing machines. The Town initially estimated these machines would use 500 gallons of water per machine per day, or a total business usage of 15,000 gallons of water per day. The initial estimate was later revised downward when the engineers monitored Gwynn's water meter and determined the laundromat would use an average of 13,200 gallons per day. The revised figure represents a business usage which is 38.05 times greater than the average residential user. Accordingly, the Town of Eureka has been billing Gwynn's Laundromat $266.35 per month (38.05 × $7).

Plaintiff refused to pay his monthly sewage charges and instituted this action against the Town of Eureka and the Public Service Commission seeking to enjoin the Town of Eureka from increasing its sewage rates without prior approval of the Public Service Commission. In the alternative, plaintiff asked the District Court to declare the rates already assessed null and void. In its conclusions, the District Court ruled, "that the Montana Public Service Commission has no jurisdiction over the charges and increases of the sewer rates as established by the Town of Eureka" and "that the sewage rate as established by the Town of Eureka for Plaintiff's laundromat is fair and equitable and is not arbitrary or discriminatory." There is no mention in the findings or conclusions of section 11-1101, R.C.M.1947, which expressly refers to sewage services as public utilities. Since we determine the Public Service Commission does have jurisdiction over sewer rates, the issue of fairness of the rates is one that initially must be determined by the Public Service Commission.

It is a basic rule of law that Public Service Commission, as an administrative agency, has only those powers specifically conferred upon it by the Legislature and in determining those statutory powers, this Court must give effect to every word, phrase, clause or

194

sentence therein, if it is possible to do so. *Polson v. Public Service Commission* (1970), 155 Mont. 464, 469, 473 P.2d 508. The conferral of jurisdiction on the Public Service Commission was clear and direct:

"A public service commission is hereby created whose duty it shall be to supervise and regulate the operations of the public utilities hereafter named; * * *" Section 70-101, R.C.M.1947.

Defendants argue the furnishing of sewage services is not a "public utility" as that term is defined in section 70-103, R.C.M. 1947. Based on this premise, defendants conclude the Public Service Commission cannot interfere in matters related to sewage rates.

It is true sewage services are not expressly mentioned as a public utility in section 70-103, but the legislature has subsequently passed other statutes which must be construed together with section 70-103. Section 70-103 is a general statute setting forth the initial confines of the Public Service Commission's jurisdiction. More recent statutes expand the jurisdiction of the Commission to include sewage rates. When such expansion takes place, "the sections are to be taken together and construed in pari materia. For purposes of construction, they are to be considered as forming one homogenous and consistent body of law." *Special Road Dist. No. 8 v. Millis* (1927), 81 Mont. 86, 91, 261 P.885, 887. "When the special statute is later, it will be regarded as an exception to or qualification of the prior general one." Id. 98, 261 P. 890.

The Montana Legislature, in amending section 11-1001, R.C.M. 1947, expressly referred to sewage services as public utilities. Section 11-1001 provides.

"11-1001. Authorization of cities and towns to furnish water and sewage service to industries and to persons without city limits-rates -penalty for violations. (1)The city or town council of any city or town within the state of Montana, that owns and operates a municipal water system and/or a municipal sewage system, to furnish water and/or sewage services to the inhabitants of such city or town, *as a public utility*, shall, in addition to all other powers, have

power to furnish water from such water system and sewage services from such sewage system, to any person, factory or other industry, located within the corporate limits of such city or town, or to any person, factory or other industry located outside the corporate limits of such city or town, *at reasonable rates filed by the city or town council and approved by the public service commission* [provided that delivery of water and delivery of sewage services by any such city or town] to or for the use of any person, factory or other industry located outside the corporate limits of such city or town shall be made within, or at the boundary line of the corporate limits of such city or town, or from any existing water line or sewer line of such city or town located outside of the corporate limits of such city or town, except as hereinafter provided.

"(2) The city council of any city within the state of Montana that owns and operates a municipal water system and/or a municipal sewer services to the inhabitants of such city, *as a public utility,* shall, in addition to all other powers, have power to furnish water from such water system and sewage services from such sewer system to the inhabitants or to any person, factory, industry or producer of farm or other products *located outside of the corporate limits of such city,* at reasonable rates filed by the city or town council and approved, when otherwise required by statute, by the public service commission and such city council is further empowered to make collections for furnishing water and sewer services in the same manner as collections are made within the corporate limits. * * *" (Emphasis added).

It is clear section 11-1001, R.C.M.1947, now has given the Public Service Commission jurisdiction over municipal sewage rates. If we were to read this amendment any other way, as the Town of Eureka and the Public Service Commission asks us to do, the language added by the 1971 amendment would be rendered meaningless.

It is general rule of construction that a legislature in adopting an amendment, is presumed to intend some change in the existing law, and the Court will endeavor to give effect to that amendment. *State*

196

ex rel. Jones v. Giles (1975), 168 Mont. 130, 541 P.2d 355; State ex rel. Irvin v. Anderson (1974), 164 Mont. 513, 525 P.2d 564; State v. Hays (1929), 86 Mont. 58, 282 P. 32.

The language contained in section 11-1001 indicates the Legislature intended to place municipal sewage systems within the jurisdiction of the Public Service Commission. Such an interpretation squares with the presumption that the Legislature intended a change in the existing law. By using the phrase "as a public utility" within the body of section 11-1001(1), (2), R.C.M.1947, the Legislature equated municipal sewage plants with the other easily recognizable public utilities. Accordingly, section 11-1001 made PSC approval of sewage rates a condition precedent to the institution of those rates. Any other interpretation would render the amendments meaningless.

There is no legislative history showing why the 1971 Legislature included minicipal sewage plants within the jurisdiction of the Public Service Commission. One consideration certainly could have been that water systems and sewage systems are so inextricably related. For example, section 11-2217, R.C.M.1947, provides for collection of sewage charges by authorizing the termination of water services to premises with unpaid sewer charges. Conceivably, the Legislature recognized the potential for widespread abuse and took steps to head off such abuses.

■ The parties stipulated Gwynn's laundromat is located within the Town of Eureka. Section 11-1001(1), R.C.M.1947, by express terms, applies to sewage rates charged to users both "within" and "outside the corporate limits of such city and town". The language of section 11-1001(1) is clear. The Town of Eureka must enact "reasonable rates filed by the city or town council and approved by the Public Service Commission." Accordingly, the Town of Eureka had no authority to unilaterally set its own rates. It was required to file its sewage rates for approval by the Public Service Commission. Absent Commission approval, the rates assessed cannot take effect against plaintiff's business.

The Town of Eureka argues 11-1001(2) applies, rather than

11-1001(1). Section 11-1001(2), however, applies only to users outside the limits of the Town of Eureka. Here the parties stipulate the laundromat lies within the limits of the Town of Eureka. Section 11-1001(1) applies to users both inside and outside the municipal boundaries. It would appear that because of amendments in 1955, 1957, 1965 and 1971, the remaining vitality of section 11-1001(2), is simply to allow the municipalities to collect sewage or water fees from persons located beyond the boundaries of the municipality who obtain sewage or water services

The judgment of the District Court is reversed. We remand this case to the District Court with directions to issue the appropriate orders.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, DALY and SHEEHY concur.