No. 99-002

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 304

297 Mont. 179

991 P.2d 447

GERALD L. THAYER (DECEASED)

PHYLLIS THAYER,

Appellant,

v.

UNINSURED EMPLOYERS' FUND,

Respondent,

RICHARD SMITH, d/b/a RRS, INC.

Employer.

APPEAL FROM: Workers Compensation Court,

State of Montana,

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Norman L. Newhall, Linnell, Newhall, Martin & Schulke, P.C.;

Great Falls, Montana

For Respondent:

Mark Cadwallader, Department of Labor and Industry;

Helena, Montana

_____

Submitted on Briefs: August 12, 1999

Decided: December 7 , 1999

Filed:


_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶ Phyllis Thayer filed a petition in the Montana Workers' Compensation Court in which she alleged that the Uninsured Employers' Fund wrongfully terminated payment of her survivor benefits pursuant to § 39-71-511, MCA. The Workers' Compensation Court concluded that the Uninsured Employers' Fund properly terminated Phyllis' benefits and that § 39-71-511, MCA, did not violate Article II, Section 16 of the Montana Constitution. Phyllis appeals from that decision. We affirm the judgment of the Workers' Compensation Court.
2. ¶ Thayer raises the following issues on appeal:
3. ¶ 1. Did the Workers' Compensation Court err when it held that the Uninsured Employers' Fund properly terminated Phyllis' benefits pursuant to § 39-71-511,

MCA?

4. ¶ 2. Did the Workers' Compensation Court err when it held that § 39-71-511, MCA, does not violate Article II, Section 16 of the Montana Constitution?

## FACTUAL BACKGROUND

5. ¶ Gerald Thayer was an employee of Richard Smith. On October 15, 1992, Gerald was injured in the course and scope of his employment when his clothing caught fire and he was severely burned. On October 31, 1992, Gerald died as a result of his injuries.

6. ¶ Phyllis Thayer is Gerald's widow. She was entitled to workers' compensation death benefits pursuant to §§ 39-71-704 and -721, MCA. However, Smith, Gerald's employer did not carry workers' compensation insurance. As a result, Phyllis was eligible to receive medical and death benefits provided by the Uninsured Employers' Fund pursuant to § 39-71-503, MCA.

7. ¶ Preceding his death, Gerald incurred medical expenses for the treatment of his burn injuries in the amount of $253,207.98. The Uninsured Employers' Fund paid $85,000 to reimburse the Montana Department of Public Health and Human Services for the costs of Gerald's medical treatment. The Department accepted the $85,000 payment in full satisfaction of its claim.

8. ¶ In 1993 and 1994, Phyllis commenced actions against several defendants for damages caused by Gerald's injuries and death. Phyllis alleged that Gerald's injuries and death were caused by the negligence of his employer Smith, and his coemployee Garry Thompson, and that the retail seller and the manufacturer of CHEX liquid, the product that was being used by Gerald at the time of his injuries, were liable based on negligence and product liability theories. Phyllis sought total damages in the amount of $1,856,067.

9. ¶ Prior to trial, Phyllis settled all of the claims except for the claim of negligence against Thompson, Gerald's coemployee. The negligence claim against Smith was settled for the amount of $100,000. The negligence and product liability claim against the retail seller was settled for the amount of $130,000. The product liability claim against the manufacturer was settled for $75,000 and the negligence claim against the manufacturer was dismissed. Following a jury trial in which the jury found Thompson negligent, Phyllis settled with Thompson for the amount of $100,000.

10. ¶ On June 25, 1997, the Uninsured Employers' Fund advised Phyllis that by reason of her receipt of the $100,000 settlement from Gerald's employer Smith and

pursuant to § 39-71-511, MCA, Phyllis was no longer entitled to receive further benefits from the Uninsured Employers' Fund. As of that date, the Uninsured Employers' Fund had paid death benefits to Phyllis in the total amount of $71,878.78 representing 246 weeks of benefits. The maximum amount that she could have received for death benefits from the Uninsured Employers' Fund was $146,180 representing 500 weeks of benefits. The Uninsured Employers' Fund claimed a statutory right of setoff to the balance due, against the $100,000 settlement from Smith pursuant to § 39-71-511, MCA.

11. ¶ In October 1997, Phyllis brought an action in the Workers' Compensation Court challenging both the Uninsured Employers' Fund's termination of benefits and the constitutionality of § 39-71-511, MCA. On October 28, 1998, the Workers' Compensation Court concluded that the Uninsured Employers' Fund's termination of benefits was proper and upheld the constitutionality of § 39-71-511, MCA.

## STANDARD OF REVIEW

12. ¶ The facts in this case are undisputed. Phyllis argues that the Worker's Compensation Court erred, however, when it held that the Uninsured Employers' Fund properly terminated Phyllis' benefits pursuant to § 39-71-511, MCA, and when it held that § 39-71-511, MCA, was constitutional. When we review the Workers' Compensation Court's conclusions of law, we do so to determine if the court's interpretation of the law is correct. *McClure v. State Comp. Ins. Fund* (1995), 272 Mont. 94, 97, 899 P.2d 1093, 1095.

## ISSUE 1

13. ¶ Did the Workers' Compensation Court err when it held that the Uninsured Employers' Fund properly terminated Phyllis' benefits pursuant to § 39-71-511, MCA?

14. ¶ Section 39-71-511, MCA, entitled "Setoffs to claim against fund," provides:

A claim for benefits from the uninsured employer's fund must be discharged, finally or periodically, to the extent that an employee or the employee's beneficiaries receive actual monetary compensation by judgment or settlement from the uninsured employer, a third party who shares liability as defined in 39-71-412, or a fellow employee who shares liability as defined in 39-71-413.

15. ¶ In this case, the Uninsured Employers' Fund discharged Phyllis' claim for wage loss benefits following her receipt of a $100,000 settlement from Gerald's uninsured employer, Smith. The Uninsured Employers' Fund applied the setoff as provided by § 39-71-511, MCA, in order to discharge the remaining $74,301 of future benefits that Phyllis would have been entitled to receive from the Uninsured Employers' Fund. The Uninsured Employers' Fund did not seek recovery of any of the benefits paid to Phyllis prior to her receipt of the settlement from Smith, nor to recover benefits paid based on amounts recovered from third-parties.

16. ¶ Phyllis asserts that the Workers' Compensation Court erred when it found that the Uninsured Employers' Fund properly applied the set off pursuant to § 39-71-511, MCA. Phyllis argues that the Uninsured Employers' Fund is not applying a setoff to her benefits, rather the Fund is claiming a subrogation interest in the settlement she received from Smith. Phyllis further argues that because § 39-71-511, MCA, essentially provides the Fund a de facto subrogation interest, this Court's analyses in *Ness v. Anaconda Minerals Company* (1996), 279 Mont. 472, 929 P.2d 205; *Zacher v. American Insurance Company* (1990), 243 Mont. 226, 794 P.2d 335; and *Skauge v. Mountain States Telephone and Telegraph Company* (1977), 172 Mont. 521, 565 P.2d 628, with regard to subrogation apply and therefore the Fund may not subrogate until she has been made whole.

17. ¶ In *Skauge,* 172 Mont. at 524, 565 P.2d at 630, we defined subrogation as a "device of equity which is designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it." Black's Law Dictionary defines subrogation as: "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Black's Law Dictionary 1440 (7th ed. 1999). Phyllis asserts that even though the Fund did not claim any right to subrogation, the effect of the Fund's offset against its obligations following her receipt of a settlement from Smith, is a de facto subrogation. Her interpretation is consistent with our prior decisions, including *Skauge.* Accordingly, we conclude that the transaction in this case may be characterized as a subrogation by the Fund to the $100,000 recovery from the employer.

18. ¶ Because the transaction may be characterized as subrogation, Phyllis argues that this Court's analyses in *Ness, Zacher,* and *Skauge* should apply, and that those cases require that she be made whole before any subrogation interest may be properly claimed. However, we conclude that the facts on which our holdings in *Ness, Zacher,* and *Skauge* are based, make those cases distinguishable from this case.

19. ¶ In *Skauge,* we held that the insured was entitled to be made whole for his entire

loss, including attorney's fees, before the insurer could assert its right of legal subrogation against the insured or the tortfeasor. *Skauge,* 172 Mont. at 528, 565 P.2d at 632. We gave the following rationale for our holding:

When the sum recovered by the Insured from the Tort-feasor is less than the total loss and thus either the Insured or the Insurer must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.

*Skauge,* 172 Mont. at 528, 565 P.2d at 632 (*citing* St. Paul Fire & Marine Ins. Co v. W. P. Rose Supply Co. (1973), 198 S.E.2d 482, 484).

20. ¶ In *Ness* and *Zacher* we held that an insurer had no right to subrogation until a claimant had been made whole for his entire loss and any costs of recovery, including attorney fees. In *Zacher*, we stated the following:

While it is true that in a worker's compensation case such as the present case, the premium has been paid by the employer, there is no rational distinction between an insured under a house insurance policy and a claimant in connection with workers' compensation. The key aspect is that the insurer has been paid for the assumption of the liability for the claim, and that where the claimant has not been made whole, equity concludes that it is the insurer which should stand the loss, rather than the claimant.

*Zacher*, 243 Mont. at 230-31, 794 P.2d at 338.

21. ¶ The important distinction between the facts in *Ness, Zacher*, and *Skauge* and those in this case are that the Fund is not an insurer and has not been paid premiums by Smith, the uninsured employer, to assume the risk of any loss. The Fund is a legislatively provided source from which to minimize the hardships imposed when an injured worker is unable to get workers' compensation benefits as a result of the employer's failure to provide coverage. Furthermore, the statutes which create the Fund specifically provide that claimants to the Fund are not guaranteed full payment of benefits provided in the act. *See* § 39-71-510, MCA. We conclude, therefore, that the reasoning on which our prior subrogation cases were based, does not apply to the Uninsured Employers' Fund.

22. ¶ Moreover, the statutory scheme of the Uninsured Employers' Fund requires that we treat the Fund differently than an insurer. Payments from the Fund are dependant

upon the Fund's ability to pay claims. The legislature has directed the Fund to pay claims to the best of its ability and to make proportional reductions to all Fund claimants when the present funds are inadequate to pay all claims. *See* § 39-71-510, MCA. The setoff provisions contained in § 39-71-511, MCA, are uniquely necessary to assure some payment to as many uninsured employees as possible.

23. ¶ Finally, because Gerald's employer was uninsured, the exclusive remedy provision found at § 39-71-411, MCA, does not apply and Phyllis may pursue benefits from the Fund up to the amount of workers' compensation benefits she would have received if Gerald's employer had been insured, and pursuant to § 39-71-509, MCA, Phyllis may also bring a tort action against Gerald's employer, in addition to any responsible third-party. The Fund merely stands in the place of the uninsured employer, to provide some basis for recovery where the employer is impecunious.

24. ¶ Because the Fund is merely a safety net and stands in the place of the employer, we conclude that it is reasonable to condition the Fund's obligations on the extent to which the employer fails to provide compensation. We decline to extend the analyses of our recent subrogation cases *Ness, Zacher*, and *Skauge* to the setoff applied for the Fund as a result of a recovery from an uninsured employer pursuant to § 39-71-511, MCA. Therefore, we conclude that the Workers' Compensation Court did not err when it found that the Fund properly applied the setoff provision pursuant to § 39-71-511, MCA, to the extent of Thayer's recovery from the uninsured employer.

ISSUE 2

25. ¶ Did the Workers' Compensation Court err when it held that § 39-71-511, MCA, does not violate Article II, Section 16 of the Montana Constitution?

26. ¶ Article II, Section 16 of the Montana Constitution provides in relevant part:

No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under Workmen's Compensation Laws of this state.

27. ¶ Phyllis contends that the plain meaning of this constitutional provision provides only two exceptions to an employee's right to full legal redress, namely, the employer and a fellow employee if the employer is insured against Workers' Compensation claims. Phyllis asserts that neither exception applies in this case.

28. ¶ Phyllis cites *Connery v. Liberty Northwest Insurance*, 1998 MT 125, 289 Mont. 94, 960 P.2d 288, in support of her position that § 39-71-511, MCA, violates her right to full legal redress. In *Connery*, we held a statute that allowed an insurer to reduce the benefits paid by 30 percent if an injured employee obtained a third-party recovery violated an employee's right to full legal redress. *Connery*, ¶ 13. In *Connery* we stated:

The net effect of the statute is to transfer dollars recovered from the third-party tortfeasor back to the insurer. That transfer is plainly contrary to the full legal redress provision.

Liberty argues that the 30 percent reduction does not affect Connery's third-party recovery and that the statute merely deals with a claimant's entitlement to benefits. This argument is without merit. But for her third-party recovery, Connery would be entitled to full workers' compensation benefits without reduction.

*Connery*, ¶¶ 13-14. Based upon this language, Phyllis asserts that: "[b]ut for [her] recovery against the employer and other third parties, she would be entitled to full workers' compensation benefits from the UEF without reduction," and therefore § 39-71-511, MCA, violates her right to full legal redress.

29. ¶ In support of her position, Phyllis also cites *Francetich v. State Compensation Mutual Insurance Fund* (1992), 252 Mont. 215, 827 P.2d 1279, in which we concluded that a statute that allowed a workers' compensation insurer subrogation against third-party recovery, even though the recovery is less than the total amount of damages, was unconstitutional because it deprived an employee of his right to full legal redress.

30. ¶ In concluding that the full legal redress provision was not violated by § 39-71-511, MCA, the Workers' Compensation Court looked to the history of the section as set forth in the minutes of the 1972 Constitutional Convention and as quoted by *Trankel v. Montana Department of Military Affairs* (1997), 282 Mont. 348, 938 P.2d 614.

31. ¶ In *Trankel* we stated that:

The second sentence of Article II, Section 16, was a response to that decision [*Ashcraft v. Montana Power Co.* (1971), 156 Mont. 368, 480 P.2d 812.] based on the delegates' intent that employees not be barred from third-party suits for injuries sustained during the course of their employment. The following minutes from the

Constitutional Convention illustrate that point.

Under Montana law, as announced in the recent decision of *Ashcraft versus Montana Power Company*, the employee has no redress against third parties for injuries caused by them if his immediate employer is covered under the Workmen's Compensation law . . . . <u>It is this specific denial, and this one only, that the committee intends to alter with the following additional wording</u>: "No person shall be deprived of his full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation laws of this state."

*Trankel v. State*, (1997) 282 Mont. 348, 359-60, 938 P.2d 614, 621-622 (emphasis added) (citing Montana Constitutional Convention, Vol. V at 1754 (March 8, 1972)). Additionally, in *Trankel*, we reiterated that "we have considered the impact of Article II, Section 16, on numerous occasions and, without exception, have held that it precludes limitations on claims by injured employees against persons other than the employee's employer or fellow employee." *Trankel*, 282 Mont. at 361, 938 P.2d at 622. However, we conclude that because the plain language of Article II, Section 16 does not distinguish between third-parties and uninsured employers, it is not appropriate to create a distinction based on what we conclude was the delegates' intention. *See Woirhaye v. Montana Fourth Judicial Dist. Court* (1998), 292 Mont. 185, 189, 972 P.2d 800, 802. Nevertheless, we conclude that the Workers' Compensation Court arrived at the right result, even if for the wrong reason.

32. ¶ Because the Uninsured Employers' Fund is not an insurer and was statutorily created to provide a substitute source of benefits to the employee of an uninsured and impecunious employer, we conclude that *Connery* and *Francetich* are not analogous, and limiting the Uninsured Employers' Fund's obligation to the extent of the uninsured employer's ability to compensate the employee or his family does not diminish the employee's right to full legal redress against the uninsured employer.

33. ¶ Accordingly, we further conclude that § 39-71-511, MCA, does not violate the right to full legal redress as set forth in Article II, Section 16 of the Montana Constitution.

34. ¶ For these reasons the judgment of the Workers Compensation Court is affirmed.

/S/ TERRY N. TRIEWEILER

No

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART