No. 00-456

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 72

AUTO PARTS OF BOZEMAN,

        Appellant/Respondent,

   v.

EMPLOYMENT RELATIONS DIVISION
UNINSURED EMPLOYERS' FUND,

        Respondent/Appellant.

FILED

APR 2 6 2001

*Ed Smith*
CLERK OF SUPREME COU~
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court
                 For the State of Montana
                 The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Dennis E. Lind, Datsopoulos, MacDonald & Lind, Missoula, Montana

        For Respondent:

                Mark Cadwallader, Special Assistant Attorney General, Department of
                Labor and Industry, Helena, Montana

        For Amicus Curiae:

                Curtis E. Larson, Special Assistant Attorney General, Montana State
                Fund, Helena, Montana; Charles G. Adams, Jacqueline T. Lenmark, Keller,
                Reynolds, Drake, Johnson & Gillespie, Helena, Montana (American Insurance
                Association)

                          Submitted on Briefs: January 18, 2001

                                 Decided: April 26, 2001

Filed:

_____
                 Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Appellant Auto Parts of Bozeman (Auto Parts) carried workers' compensation insurance with Montana State Fund (State Fund). State Fund canceled Auto Parts' coverage for failure to pay a premium. Thereafter, the Uninsured Employers' Fund (UEF), assessed a penalty against Auto Parts for failure to carry workers' compensation insurance. Following a contested hearing, the Workers' Compensation Court found that the Department of Labor and Industry (DLI) erred by not allowing Auto Parts to defend the UEF claim on the basis that State Fund had improperly canceled its policy. The court found that DLI had improperly shifted the burden of proof from UEF to Auto Parts, thus denying Auto Parts its right to due process of law. UEF appeals the decision of the Workers' Compensation Court. The Montana State Fund and the American Insurance Association have filed *amicus curiae* briefs with the Court. We reverse and remand.

¶2 The UEF raises the following issues on appeal:

¶3 **1. Whether the Workers' Compensation Court erred when it ruled that the UEF failed to meet its burden of proving that Auto Parts was an uninsured employer because it did not present evidence that the purported cancellation was proper as a matter of law.**

¶4 **2. Whether the Workers' Compensation Court erred in determining that the issue of jurisdiction was not barred by the doctrine of collateral estoppel.**

¶5 **3. Whether it was error to give DLI jurisdiction to adjudicate a contract dispute of the propriety of cancellation.**

## Factual and Procedural History

¶6    Auto Parts carried a workers' compensation insurance policy with the State Fund. Following non-payment of an advance premium, the State Fund sent a notice to Auto Parts in January, 1996, warning that the policy would be canceled if the advance premium, due January 1, was not received by February 1. The "Cancellation Notice" sent by the State Fund reads as follows:

> We will cancel your policy at 12:01 a.m. on the pending cancellation date(s) shown below unless each item is received by its respective pending cancellation date. We will not accept claims occurring on or after the pending cancellation date(s) unless we receive each item by its pending cancellation date.
>
> . . .
>
> Once your coverage is canceled, we must re[c]eive all delinquent reports, amounts due, a new application, and sufficient advance premium or deposit to initiate new coverage. THERE WILL BE A LAPSE OF COVERAGE FROM THE CANCELLATION DATE TO THE NEW POLICY EFFECTIVE DATE.
>
> The Department of Labor and Industry's Uninsured Employer's Fund receives information concerning all cancellations of coverage. You are subject to fines, penalties and court action if you have not complied with coverage requirements under the Workers' Compensation Act. (Emphasis in original.)

¶7    Auto Parts issued a check for the premium, but did not mail it to the State Fund until sometime during the month of February. The State Fund marked it as received on February 21, 1996. The check was cashed and the amount was applied by the State Fund to the unpaid portion of the policy. The President of Auto Parts testified he believed that since the check for the premium had been cashed by State Fund, the policy had not been canceled and coverage continued. The State Fund, however, maintained that the policy was rightfully

canceled and that the payment was applied not as an advance premium, but instead against amounts still owed by Auto Parts for the unpaid period prior to cancellation. According to the State Fund, the policy was canceled as of February 1 and the cancellation was reported to the appropriate databases. A status report reflecting this was sent to Auto Parts by the State Fund, but it is not clear whether it was received.

¶8 Auto Parts claims it was unaware of the cancellation of its policy when in April, 1996, one of its employees was injured in an on-the-job accident. Auto Parts submitted a first report of injury to the State Fund. At that point, the State Fund again informed Auto Parts of the previous cancellation and sent them an application to re-enroll. Auto Parts paid the necessary premium to re-enroll, and coverage became effective April 23, 1996.

¶9 Auto Parts requested a "customer service review" by the State Fund to determine if State Fund had failed to abide by its internal policies or made a mistake when the first policy was canceled. After a review, the State Fund determined that it had complied with the terms of the contract and that coverage had properly been canceled. The State Fund refused to back-date the new policy.

¶10 Because it had determined that the original Auto Parts policy was not in effect at the time of the work-related accident , the injury report filed by Auto Parts was forwarded by the State Fund to the UEF. As a result, an auditor for the UEF investigated Auto Parts' workers' compensation insurance coverage, checking both the State Fund database and the National Workers' Compensation Insurance Database. The UEF determined, based on this

4

information, that Auto Parts was uninsured for the period between February 2, 1996 and April 23, 1996. The UEF therefore paid the medical bills for the injured employee, assessed a penalty against Auto Parts for the period of non-coverage, and presented a claim for indemnification for the medical bills paid by UEF for the injured worker.

¶11 Facing a UEF penalty and indemnification claim, Auto Parts requested a contested hearing before the DLI. (Auto Parts v. State Compensation Insurance Fund, Policy No. 3-119389-3). Auto Parts argued that the State Fund had acted improperly in canceling the policy. On February 4, 1998, the hearing officer issued an order dismissing the hearing request on the grounds that DLI lacked subject matter jurisdiction over the contract dispute. The hearing officer reasoned:

> Procedures governing payments from the insured and cancellation are set forth in the contract of insurance between the parties. The contract specified that the District Court, Lewis and Clark County, has jurisdiction to hear any suits brought under the policy. This matter is one in which Petitioner seeks a remedy or the enforcement of a right founded in the contract or insurance law.

Ultimately, the matter was dismissed by the department:

> The Department of Labor and Industry does not have jurisdiction over contract disputes between an insurance carrier and its policyholder. This is purely a contract dispute over how a policyholder's payment is applied by the insurance company when that policy has been canceled.

The order noted that either party could appeal within 30 days to the Workers' Compensation Court. Auto Parts did not appeal this order.

¶12 Auto Parts then requested a contested case hearing from the DLI to challenge UEF's determination that Auto Parts was an uninsured employer. (Auto Parts v. Employment

Relations Division, Uninsured Employers' Fund, UEF Case No. 9258). Auto Parts contested the penalty assessed by the UEF, and raised two other issues relating to the propriety of State Fund's cancellation of the insurance policy. The hearing officer again refused to consider Auto Parts' contention that it believed it was insured by the State Fund on the date of the employee's injury. The hearing officer based his refusal on Auto Parts' failure to appeal the previous DLI order dismissing the case for lack of jurisdiction over the contract dispute between the insurer and the insured:

> Crucial to the instant case is the appellant's failure to appeal Mr. Gerke's February 4, 1998 order to the Montana Workers' Compensation Court, in keeping with the appeal rights set out in that order. Accordingly, the appellant cannot now claim a denial of due process, when it failed to utilize its duly-authorized forum before the Workers' Compensation Court to challenge hearing officer Gerke's order regarding any dispute Bozeman Auto Parts had with the State Fund. Moreover, it appears that the UEF held off pursuing the instant case to permit the appellant to pursue District Court action against the State Fund, which it failed to take.

At the hearing, testimony was presented by a Compliance Specialist for the UEF. She testified that in her investigation of Auto Parts, she reviewed the National Council of Compensation Insurance Database as well as the State Fund's database. Both databases confirmed that the State Fund had canceled Auto Parts' workers' compensation policy on February 1, 1996. Auto Parts did not present any evidence indicating that another policy was in place during the period in question. On the basis of this evidence, the hearing officer concluded that the UEF had met its burden of proof that Auto Parts was uninsured, and that

6

Auto Parts was therefore liable for the penalty and benefits paid to the employee. Formal Findings of Fact, Conclusions of Law, and a Final Order were issued on May 25, 1999.

¶13 Auto Parts appealed this order to the Workers' Compensation Court. The court reversed the determination of the hearing officer, saying that in order to meet its burden of proof, the UEF needed to prove not only the fact that the insurance was canceled, but also that the State Fund's cancellation of the policy was legally correct. The court said that visitation of this issue was not barred by the doctrine of collateral estoppel because the initial order had only determined that the DLI did not have jurisdiction to resolve a separate action regarding the propriety of the State Fund's cancellation of the policy. The court said that the initial order did not address the issue raised in the second hearing, as it did not "determine that the Department lacked jurisdiction to determine coverage in a Department proceeding seeking a penalty and indemnification."

¶14 According to the Workers Compensation Court, the DLI did have jurisdiction to resolve the dispute over whether the State Fund rightfully canceled Auto Parts' policy for failure to pay premiums. The Workers' Compensation Court reasoned that the DLI has quasi-judicial power and, as a result, may exercise jurisdiction over any issue in front of it. Furthermore, it determined that the hearing officer had improperly shifted the burden of proof from the UEF to Auto Parts. The court relied on *C. Loney Concrete v. Employment Rel. Div.*, 1998 MT 230, 291 Mont. 41, 964 P.2d 777, for the proposition that the UEF bears the burden of proving all elements of its case. According to the court, the shift in the burden

7

of proof resulted in a violation of Auto Parts' statutory due process rights to contest the allegation that it was uninsured, "cutting off its opportunity to prove the lack of an essential element of the case against it."

¶15 The Workers' Compensation Court accordingly reversed the decision of the DLI, finding that because the UEF failed to present evidence that the purported policy cancellation was proper as a matter of law, it failed to prove that Auto Parts was an uninsured employer. This appeal follows.

## Standard of Review

¶16 When this Court reviews the Workers' Compensation Court's conclusions of law, it does so to determine whether the Workers' Compensation Court's interpretation of the law is correct. *Thayer v. Uninsured Employers' Fund*, 1999 MT 304, ¶ 12, 297 Mont. 179, ¶12, 991 P.2d 447, ¶12.

## Discussion

### Issue I

¶17 **Did the Workers' Compensation Court err when it ruled that the UEF failed to prove that Auto Parts was an uninsured employer because it did not present evidence that the purported cancellation was proper as a matter of law?**

¶18 Employers are required by the Workers' Compensation Act to obtain and maintain Workers' Compensation Insurance for their employees under a choice of three plans, one of which is available through the State Fund. Section 39-71-401, MCA.

¶19 The UEF is authorized to assess a penalty against employers who are not properly enrolled in one of these three plans. Section 39-71-504(1), MCA (1995), provides in relevant part:

> The department may require that the uninsured employer pay to the fund a penalty of either up to double the premium amount the employer would have paid on the payroll of the employer's workers in this state if the employer had been enrolled . . . or $200, whichever is greater . . .

An uninsured employer is defined by the Workers' Compensation Act as, "an employer who has not properly complied with the provisions of 39-71-401." Section 39-71-501, MCA (1995). An employer who "has not properly complied," is one that is not covered by one of the three approved plans.

¶20 The Workers' Compensation Court determined that in order to meet its burden of proof, the UEF needed to prove not only that there was an absence of coverage during the time frame at issue, but also that the State Fund's cancellation of the policy was legally correct. We disagree with the analysis of the court on this issue. We agree instead with the hearing officer, who concluded that the UEF meets its burden of proof by establishing that Auto Parts was not insured by the State Fund or any other insurer on the date of the accident. The responsibility of sorting through the claims and defenses between an employer and its insurer relative to their contract dispute does not fall on the UEF. Rather, it is the responsibility of the employer, as a party to the contract, to resolve disputes with the insurance carrier.

¶21 To require the UEF to litigate the merits of an employer's dispute with its insurance carrier would defeat the purpose of the Workers' Compensation system. The advantage of the system is that workers are guaranteed a no-fault recovery while industry, in turn, is relieved of the possibility of enormous recoveries in the tort system. Workers' compensation statutes are sometimes described as a *quid pro quo* exchange of rights and remedies. *Buerkley v. Aspen Meadows Ltd. Partnership*, 1999 MT 97, ¶ 16, 294 Mont. 263, ¶ 16, 980 P.2d 1046, ¶ 16. In order for the system to work, however, employers must maintain insurance in compliance with the statutes.

¶22 Because not all employers comply with the statutory requirement to carry insurance on their employees, the UEF was created to provide an injured employee of an uninsured employer with the same benefits which the employee would have received had the employer been properly enrolled in a workers' compensation plan. *See* § 39-71-502, MCA (1991). *Zempel v. Uninsured Employers' Fund* (1997), 282 Mont. 424, 431, 938 P.2d 658, 663. The UEF is a legislatively created fund, the payments from which are intended to minimize the hardships imposed when an injured worker is unable to get workers' compensation benefits as a result of the employer's failure to provide coverage. *Thayer,* ¶ 21. The UEF is not an insurer, but merely a safety net. *Thayer* ¶ 24. In order for the benefits of the UEF to be available to the worker, it must merely be established that the employer is uninsured, which the UEF established here. Any more onerous requirement on the UEF, such as the Workers' Compensation Court imposed, would frustrate the intent of the UEF, which is simply to

deliver benefits to the injured employee of an uninsured employer. Section 39-71-502, MCA; *Zempel*, 282 Mont. at 431, 938 P.2d at 663.

¶23 Auto Parts could have pursued a separate claim in district court against the State Fund for breach of contract. It elected not to do so. We will not address the merits of the propriety of State Fund's cancellation of Auto Parts' insurance policy. The merits of that dispute are simply not germane to the sole issue before the UEF when this case began, which was whether or not Auto Parts was an insured employer at the time of its employee's injury. Having confirmed through the State Fund and National Workers' Compensation Insurance Database that Auto Parts was uninsured at that time, UEF had a statutory duty to pay the injured employee the same benefits he would have received had Auto Parts been insured. It was not obligated by statute or otherwise to do more.

¶24 In the process of maintaining workers' compensation insurance coverage, an employer is often called upon to address and resolve disputes with its insurer. It is not enough for Auto Parts to now say that it thought or assumed it was insured, when it was not. Auto Parts had a duty to its employees to ensure that the insurance covering them in the event of an injury did not lapse for any reason. Allowing an employer to interpose its unresolved disputes with its insurance carrier as a defense against attempts by the UEF to collect statutory penalties and reimbursement for payments it made to an injured worker, would be contrary to public policy.

¶25   Because it was not incumbent upon UEF to sort through and resolve the insurance coverage disputes between Auto Parts and the State Fund, and because UEF met its burden of proving an absence of insurance coverage on the date of Auto Parts' employee's injury, we hold that the Workers' Compensation Court erred in its determination that the UEF failed to prove that Auto Parts was an uninsured employer.

## Issue 2.

**¶26   Did the Workers' Compensation Court err in determining that the  issue of jurisdiction was not barred by the doctrine of collateral estoppel?**

¶27   The Workers' Compensation Court concluded that the DLI should have allowed Auto Parts to raise the argument that the State Fund had improperly canceled its policy, as a defense to UEF's claim for assessments and penalties.   However,  Auto Parts had participated in an earlier hearing in which the hearing officer determined that the DLI did not have jurisdiction over contract disputes between an insurance carrier and its policyholder. Auto Parts did not appeal this order.  UEF argues that this failure to appeal precludes Auto Parts from raising the contractual issues as a defense in a second hearing, under the doctrine of collateral estoppel.  We agree.

¶28   The doctrines of *res judicata*, collateral estoppel, and law of the case are all based on judicial policy favoring a definite end to litigation. *Federated Mut. Ins. Co. v. Anderson*, 1999 MT 288, ¶ 58, 297 Mont. 33, ¶ 58,  991 P.2d 915, ¶ 58.  The doctrine of *res judicata* prevents a party from relitigating a matter that the party has already had an opportunity to litigate. *Federated*, ¶ 58.

12

¶29 Collateral estoppel, sometimes referred to as issue preclusion, is a form of *res judicata*. While *res judicata* bars parties from relitigating claims in subsequent proceedings arising out of the same cause of action, collateral estoppel bars the reopening of an issue in a second cause of action that has been litigated and determined in a prior suit. *Holtman v. 4-G's Plumbing & Heating, Inc.* (1994), 264 Mont. 432, 439, 872 P.2d 318, 322.

¶30 This Court applies a three-part test to determine if collateral estoppel bars relitigation of an issue. *Haines Pipeline Const. v. Montana Power* (1994), 265 Mont. 282, 288, 876 P.2d 632, 636. The test requires these inquiries: first, whether the issue decided in the prior adjudication was identical with the one presented in the action in question; second, whether there was a final judgment on the merits; and third, whether the party in question was a party to or in privity with a party to the prior adjudication. *Haines Pipeline*, 265 Mont at 288, 876 P.2d at 636. *In re Raymond W. George Trust*, 1999 MT 223, ¶ 42, 296 Mont. 56, ¶ 42, 986 P.2d 427, ¶ 42.

¶31 It is clear that the second and third prongs have been met. Auto Parts brought both actions, and did not appeal the order terminating the first action within the time period allotted, making the order final. Satisfaction of the first prong, however, is the most important element of collateral estoppel. *Holtman*, 264 Mont. at 439, 872 P.2d at 322. In order to satisfy this prong, the identical issue or "precise question must have been litigated in the prior action." *Holtman*, 264 Mont. at 439, 872 P.2d at 322. We compare the

13

pleadings, evidence, and circumstances of the two actions to determine whether the issues are identical. *Fadness v. Cody* (1997), 287 Mont. 89, 96, 951 P.2d 584, 589.

¶32 Collateral estoppel extends to all questions essential to the judgment and actively determined by a prior valid judgment. *Haines Pipeline*, 265 Mont. at 288, 876 P. 2d at 636. It bars the relitigation of determinative facts which were actually or necessarily decided in a prior action. *Haines Pipeline*, 265 Mont. at 288, 876 P. 2d at 636. *See also, Rafanelli v. Dale*, 1998 MT 331, ¶ 12, 292 Mont. 277, ¶ 12, 971 P.2d 371, ¶ 12.

¶33 The Workers' Compensation Court concluded that consideration of the issue of jurisdiction was not barred by collateral estoppel because the issues in the two matters were not identical. It reasoned that while the order in the initial hearing addressed whether the DLI had jurisdiction to reach the contractual issues between Auto Parts and the State Fund in a separate hearing, it did not say that the DLI did not have jurisdiction to reach these issues where the employer was challenging the UEF's ability to assess a fee. We disagree.

¶34 On February 4, 1998, a hearing officer of the DLI determined that the Department did not have subject matter jurisdiction over the contractual dispute between the State Fund and Auto Parts. The hearing officer noted that adjudication of such a dispute would be proper in the District Court. The DLI has only the jurisdiction granted to it by statute, and adjudication of insurance contracts does not fall within its jurisdiction.

¶35 Auto Parts' failure to appeal the issue following the first hearing precludes it from making the argument that the DLI did have jurisdiction over this dispute in the second

14

hearing. We therefore hold that all three prongs of the test were met, and that relitigation in the second proceeding of the issue of DLI jurisdiction over the contract dispute between Auto Parts and the State Fund was barred by the doctrine of collateral estoppel.

**Issue 3.**

¶36 **Whether it was error to give DLI jurisdiction to adjudicate a contract dispute regarding the propriety of cancellation.**

¶37 In its order, the Workers' Compensation Court further concluded that the DLI tribunal did have jurisdiction to address the contract dispute between the State Fund and Auto Parts because it was operating in a quasi-judicial power. The court reasoned that the DLI tribunal was acting as a court, which allowed the hearing officer the power to address all issues and facets of the case. Although we need not reach this issue in light of our rulings above, we deem it necessary to lay to rest the question of DLI jurisdiction over substantive coverage disputes between an employer and its insurer.

¶38 While an administrative body acting as a tribunal has quasi-judicial power, it does not follow that its power is equal to the power of a district court to hear all facets of a case. Jurisdiction in an administrative hearing, contrary to a District Court's jurisdiction, is strictly limited by statute. "It is a basic rule of law that . . . an administrative agency, has only those powers specifically conferred upon it by the legislature . . ." *City of Polson v. Public Service Com'n* (1970), 155 Mont. 464, 469, 473 P.2d 508, 511, *Gwynn v. Town of Eureka* (1978), 178 Mont. 191, 193, 582 P.2d 1262, 1263. An administrative agency may not assume

15

jurisdiction without express delegation by the legislature. *City of Billings v. Public Service Com'n of Montana* (1981), 193 Mont. 358, 369, 631 P.2d 1295, 1303.

¶39 There is no statutory delegation of authority to the DLI to adjudicate the merits of contract disputes between parties. Regulation of insurance contracts is governed by the insurance commissioner and the relevant statutory provisions relating to insurance disputes. Further, it appears from the record that the contract between the State Fund and Auto Parts specified that the forum for adjudicating disputes arising under the contract was the District Court. The DLI cannot and should not be adjudicating disputes between insurance companies and employers. The problems with holding otherwise are obvious. Primarily, the State Fund would not be a party to these matters and would not be bound by a DLI decision on coverage. More to the point, an adjudication of coverage questions by the DLI would leave the UEF without a method to collect fines or amounts it has paid to the employees of the uninsured employer. This would render the UEF system "safety net" unworkable, to the detriment of employees of uninsured employers.

¶40 We also disagree with the Workers' Compensation Court's conclusion that Auto Parts was deprived of a due process right when it was prevented from presenting evidence relating to the contract dispute between itself and the State Fund. Auto Parts had the opportunity to appeal the initial order of the DLI to the Workers' Compensation Court but it failed to do so. Furthermore, it had the opportunity to pursue its remedies against the State Fund in district court, and it appears from the record that the UEF delayed collection of the penalty to give

16

Auto Parts additional time to pursue that opportunity. Again, however, it failed to do so. There is no denial of due process where a party fails to pursue the remedies provided.

¶41 For the foregoing reasons, we reverse the decision of the Workers' Compensation Court, and affirm the DLI finding that Auto Parts was an uninsured employer at the time of it's employee's injury, and that Auto Parts is therefore liable to the UEF as determined in the DLI Final Order of May 26, 1999.

_Patricia Cotter_
Justice

We Concur:

_____
Chief Justice

_W. William Leaphart_

_____

_____

_____
Justices

17

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶42    I concur entirely in the Court's opinion on issues one and two. I respectfully dissent from the inclusion of issue three, whether it was error to give DLI jurisdiction to adjudicate a contract dispute regarding the propriety of cancellation, in that opinion.

¶43    The Court candidly--and correctly--admits that "we need not reach this issue in light of our rulings above. . . ." Having conceded that to be true, the Court's opinion should end after issue two.

¶44    Obiter dictum is a Latin phrase meaning "something said in passing." It is defined as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." BLACK'S LAW DICTIONARY 1100 (7th ed. 1999). The analysis and determination advanced by the Court in issue three is--clearly and merely--obiter dictum in that it is unnecessary to the decision in the case, by the Court's own admission. In my view, we should not intentionally include obiter dictum in our opinions, which are intended to be precedential statements of the law by this Court. While there may be many issues in cases before us--or in the more abstract universe surrounding us--which might benefit for practical or policy reasons by an expression of this Court's thoughts on the matter, it is my opinion that doing so is not this Court's job. Our job is to resolve the dispositive issues in a case before us and then to move on to another case, of which plenty await our attention.

18

¶45 In addition, the Court's discussion of the dispositive issues in this case makes its thoughts sufficiently clear on whether contract disputes between an employer and its carrier are within the purview of administrative proceedings. For example, the Court states at ¶ 21 that "[t]o require the UEF to litigate the merits of an employer's dispute with its insurance carrier would defeat the purpose of the Workers' Compensation system." The Court also states, at ¶ 23, that "Auto Parts could have pursued a separate claim in district court against the State Fund for breach of contract" but "elected not to do so." Finally, and most clearly and concretely, the Court states at ¶ 34 that "[t]he DLI has only the jurisdiction granted to it by statute, and adjudication of insurance contracts does not fall within its jurisdiction."

¶46 I dissent from the Court's inclusion of issue three, which is obiter dictum in its entirety, in the opinion in this case.

_____
Chief Justice