JUSTICE RICE,
dissenting.
¶21 “[A]n exclusion is not synonymous with the concept of subrogation ....” St. Farm Mut. Automobile Ins. Co. v. Walker, 505 S.E.2d 828, 830 (Ga. App. 1998).
¶22 Although I concur with the Court’s determination under the first issue that the Commissioner possessed the authority to withdraw a prior approval of the Blue Cross and Blue Shield (BCBS) policy forms, I dissent from the Court’s resolution of the second issue because it fails to recognize the distinction between subrogation and insurance exclusions.
¶23 This Court has previously acknowledged that it has confused subrogation with distinctly different concepts. In Youngblood v. Am. Sts. Ins. Co., 262 Mont. 391, 866 P.2d 203 (1993), for example, the Court recognized its past failure to distinguish between subrogation and assignment. We stated:
The ‘blurring” of the distinction between an assignment and subrogation, in our decisions inReitler and Christenson, and the misapplication of those concepts in those cases, was unfortunate. There is a definite, legal distinction between the two doctrines, *430 and, in Reitler and Christenson, we erred in reasoning otherwise.
Youngblood, 262 Mont. at 398, 866 P.2d at 207. Of course, merely because we have failed to properly apply subrogation concepts in the past does not mean we have failed to do so in this case, but our past confusion provides an appropriate backdrop here, as the Court has again confused the concept.
¶24 We have explained that subrogation stems from the Latin root ‘Subrogare,” which means “to pray under or through.” Swanson v. Champion Intern. Corp., 197 Mont. 509, 519, 646 P.2d 1166, 1171 (1982). Although the Court offers the cursory definition of subrogation as “an equitable doctrine designed to compel the ultimate payment of an obligation by the person ‘who injustice, equity and good conscience should pay it,’” Opinion, ¶ 18 (quoting Skauge v. Mt. Sts. Tel. & Telegraph Co., 172 Mont. 521, 524, 565 P.2d 628, 630 (1977)), subrogation involves more than this “do good” objective. Subrogation is a substitutionary legal action, whereby one party acquires the legal rights of another in exchange for assuming that person’s risk of loss. In the insurance context, it occurs “so that the [insurer] will succeed to the rights of the [insured] in relation to the debt or claim ....” Youngblood, 262 Mont. at 395, 866 P.2d at 205. A key component to subrogation is consideration-the insured pays a premium in exchange for the insurer’s assumption of his risk of loss. Thayer v. Uninsured Employers’ Fund, 1999 MT 304, ¶ 21, 297 Mont. 179, 991 P.2d 447.
¶25 On the other hand, exclusions are ‘insurance-policy provision[s] that except[] certain events or conditions from coverage.” Black’s Law Dictionary 605 (Bryan A. Garner ed., 8th ed., West 2004). We have held that exclusions “will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy.” Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co., 350 Mont. 184, 198, 206 P.3d 919, 929 (quoting Wellcome v. Home Ins. Co., 257 Mont. 354, 356-57, 849 P.2d 190, 192 (1993)). However, despite the narrow interpretation given to exclusions, under no circumstances should the Court “seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract.” Newbury v. St. Farm Fire & Cas. Ins. Co. of Bloomington, Ill., 2008 MT 156, ¶ 35, 343 Mont. 279, 184 P.3d 1021 (quoting Mont. Petroleum Tank Release Compen. Bd. v. Crumley’s, Inc., 2008 MT 2, ¶ 35, 341 Mont. 33, 174 P.3d 948).
¶26 To delineate the difference between subrogation and exclusions in this case, it is necessary to start with the applicable exclusionary *431 language in the BCBS policy. Although the Court includes a portion of this language, it does not include the prefatory language to the exclusions. Opinion, ¶ 8. The complete language is as follows:

EXCLUSIONS AND LIMITATIONS

All Benefits provided under this Contract are subject to the Exclusions and Limitations in this section and as stated under the Benefit Section. Except as otherwise provided in this Contract, The Plan will not pay for ...

3. Services, supplies, and medications provided to treat any injury to the extent the Member receives, or would be entitled to receive where liability is reasonably clear, benefits under an automobile insurance policy. Such benefits received by the Member shall be used first to satisfy any remaining Coinsurance, Copayments and Deductibles related to the injury for which claims are submitted to The Plan. The injury related claims must be submitted to The Plan to apply any applicable credit to Coinsurance, Copayments and/or Deductibles.
4. Services, supplies, and medications provided to treat any injury to the extent the Member receives, or would be entitled to receive where liability is reasonably clear, benefits from a premises liability policy. Examples of such policies are a homeowners or business liability policy. Such benefits received by the Member shall be used first to satisfy any remaining Coinsurance, Copayments, and Deductibles related to the injury for which claims are submitted to The Plan. The injury related claims must be submitted to The Plan to apply any applicable credit to Coinsurance, Copayments and/or Deductibles.
(Emphasis added.)
¶27 Nowhere within these exclusions does the word “subrogation” appear, which is why the Commissioner argues that the policy embodies “de facto subrogation.” However, more importantly, these provisions do not even include the concept of subrogation. Despite the Commissioner’s effort to transform the exclusions into de facto subrogation by an ‘if it looks like a duck” analogy, subrogation arises only when there is a “substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.” Thayer, ¶ 17 (quoting Black’s Law Dictionary 1440 (Bryan A. Garner ed., 7th ed., West 1999)). Here, subrogation never occurs because BCBS lacks any authority to substitute itself for the insured. BCBS has merely used the freedom of contract to exclude any coverage and thereby refuse to *432 assume a risk. The provisions are clear and unambiguous: under the proposed policy, BCBS would be contracting with a customer for a single recovery, and basing the customer’s premium thereon. I find it disturbing that the Court, despite its own warning, recently expressed, has acted with ‘Violent hands ... to include a risk clearly excluded by the insurance contract” and for which BCBS would receive no payment. Newbury, ¶ 35 (quoting Crumley’s, ¶ 35).
¶28 Although this Court has not specifically addressed the distinction between subrogation and exclusions, other courts have done so. Georgia law is similar to Montana law, particularly with respect to Georgia’s “complete compensation rule” limiting the application of subrogation and reimbursement provisions, which is similar to Montana’s “made whole” rule. Walker, 505 S.E.2d at 830; see also Duncan v. Integon Gen. Ins. Corp., 482 S.E.2d 325 (Ga. 1997).
¶29 In Walker, 505 S.E.2d at 829, Demarcus Walker injured himself in an automobile accident, sustaining medical expenses amounting to $10,671.29. The State Farm policy covering Walker provided the following exclusion:
If the injured person has been paid damages for the bodily injury by or on behalf of the liable party in an amount ... equal to or greater than the total reasonable and necessary medical expenses incurred by the injured person, we owe nothing under this coverage.
Walker, 505 S.E.2d at 830 (emphasis added). Because Walker settled with Southern General Insurance for $15,000.00, State Farm denied coverage. Walker, 505 S.E.2d at 829-30.
¶30 State Farm argued that the coverage exclusion, and not subrogation, relieved it of an obligation to pay Walker. Walker, 505 S.E.2d at 830. Walker argued application of the “complete compensation rule.” Walker, 505 S.E.2d at 830. The court stated:
We agree with State Farm that an exclusion is not synonymous with the concept of subrogation', the exclusion in this case defines or limits the circumstances under which an insurer must provide coverage, while the right of reimbursement is dependent on the existence of coverage and arises only if State Farm pays medical expenses under its coverage.
Walker, 505 S.E.2d at 830 (emphasis added). The Georgia court’s logic is convincing, especially in light of the distinction between subrogation and exclusion already accommodated in Montana law.
¶31 The next question is whether the exclusions in the BCBS policy violate Montana’s public policy. Under our law, insurance contracts *433 may include exclusions “without violating public policy if the exclusion applies to optional, rather than mandatory, coverage.” Newbury, ¶ 36 (citing Stutzman v. Safeco Ins. Co. of Am., 284 Mont. 372, 380-81, 945 P.2d 32, 37 (1997)). For example, Montana law mandates coverage for ‘bodily injury of $25,000.00 per person and $50,000.00 per accident, and a liability limit of $10,000.00 for injury to or destruction of property.”Newbury, ¶ 36 (citing §§61-6-103(2), 301(1), MCA). Medical payments coverage, however, is optional. Newbury, ¶ 36. The same is true of the health insurance BCBS offers; it is optional coverage under Montana law. Consequently, the inclusion of medical payments coverage ‘in an insurance contract is at the sole discretion of the parties to the contract.” Newbury, ¶ 36. BCBS has exercised its discretion and right to contract in crafting the policy.
¶32 Notwithstanding the line Newbury drew between mandatory and optional coverage, the Commissioner attempts to distinguishNezuirary from the case subjudice in two ways. First, the Commissioner argues Newbury only analyzed medical expenses, but BCBS seeks to “subrogate against” much more than medical expenses. Second, the Commissioner argues the health care subrogation statutes are unlike the statutes analyzed under Newbury. However, the Commissioner’s arguments are unconvincing.
¶33 In Newbury, Gerald Newbury, an employee of Montana Highway Maintenance Department, stopped plowing a highway to aid a vehicle in the ditch. Newbury, ¶ 7. As Newbury approached the vehicle, the driver fled the scene, striking Newbury with the door of her car. Newbury, ¶ 7. Newbury sustained injuries on the left side of his body, which totaled $18,405.80 in medical expenses. Newbury, ¶¶ 7-8. As a result of the injury, Newbury received $17,230.00 in medical expenses from the State Workers’ Compensation Insurance Fund (State Fund). Newbury, ¶ 8. Newbury also filed a claim with his two automobile insurance policies, which provided medical payment of $5,000.00 per policy (for a total of $10,000.00) if struck as a pedestrian by a motor vehicle. Newbury, ¶¶ 9-10. State Farm paid $1,175.80 in order to cover Newbury’s medical expenses beyond the $17,230.00 provided by State Fund and up to $18,405.80. Newbury, ¶ 10. State Farm refused to pay the full $10,000.00 under the two policies because each policy stated “there is no coverage ‘to the extent workers’ compensation benefits are required to be payable.’”Newbury, ¶ 9. The Court stated State Farm’s exclusion did not violate public policy because it excluded optional coverage rather than mandatory coverage. Newbury, ¶ 36.
¶34 The Commissioner’s arguments for distinguishing Newbury *434 necessarily presume BCBS is in fact engaging in subrogation. Under a proper understanding of subrogation, as articulated above, BCBS is not seeking a right of subrogation. It is of no moment that in Newbury State Farm excluded coverage when workers compensation applied and BCBS now seeks to exclude coverage when automobile insurance or premises liability insurance applies. The ability to exclude within the BCBS policy remains equally as valid as when it was done by State Farm in Newbury.
¶35 I would reverse the District Court.